RECEIVED

*(Rev. 5/1/13)*

JAN 2 9 2018

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT LOUISIANA
BY_____ *Kcw*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT    DIVISION

Dennis D. Thomas _____    Civil Action No. ___1:18-cv-0112___ SEC. P

Plaintiff

Prisoner # _533237_

VS.    Judge _____

James LeBlanc, Secretary La.D.P.S.&C Magistrate Judge _____

et. al.    Defendant

## COMPLAINT
## PRISONER CIVIL RIGHTS UNDER 42 U.S.C. § 1983

I.    Previous Lawsuits

a.    Have you begun any other lawsuit while incarcerated or detained in any facility?

Yes [ X ] No [ ]

b.    If your answer to the preceding question is "Yes," provide the following information.

1.    State the court(s) where each lawsuit was filed (if federal, identify the District, if state court, identify the County or Parish):

19th J.D.C. , 8th J.D.C., 2nd J.D.C., and U.S. District Court for the Western District of Louisiana

2.    Name the parties to the previous lawsuit(s):

Plaintiffs: Dennis Thomas _____

Defendants: La. D.P.S. & C. _____

3.    Docket number(s): 62120.8 _____

4.    Date(s) on which each lawsuit was filed: _____

5.    Disposition and date thereof [For example, was the case dismissed and when? Was it appealed and by whom (plaintiff or defendant)? Is the case still pending?]:

Denied. Appealed by Plaintiff. Appeal denied.

Page 1 of 4

b. (continued)
2. Name the parties to the previous lawsuits:
   Plaintiff: <u>Dennis Thomas</u>
   Defendant: <u>La. D.P.S. & C.</u>
3. Docket number: <u>612904</u>
4. Date(s) on which lawsuit was filed: _____
5. Disposition and date thereof:
   <u>Denied. Appealed by Plaintiff. Appeal denied.</u>

2. Name the parties to the previous lawsuits:
   Plaintiff: <u>Dennis Thomas</u>
   Defendant: <u>La. D.P.S. & C.</u>
3. Docket number: <u>651743</u>
4. Date(s) on which lawsuit was filed: _____
5. Disposition and date thereof:
   <u>~~Granted~~. Dismissed without prejudice. 08/02/17</u>

2. Name the parties to the previous lawsuits:
   Plaintiff: <u>Dennis Thomas</u>
   Defendant: <u>La. D.P.S. & C.</u>
3. Docket number: <u>653512</u>
4. Date(s) on which lawsuit was filed: _____
5. Disposition and date thereof:
   <u>Denied. August 22, 2017.</u>

1 a.

2. Name the parties to the previous lawsuits:
   Plaintiff: <u>Dennis Thomas</u>
   Defendant: <u>La. D.P.S. & C.</u>
3. Docket number: Claiborne Parish C-41125
   <u>2nd J.D.C.</u>
4. Date on which lawsuit was filed: <u>May 24, 2017</u>
5. Disposition and date thereof:
   <u>Lawsuit currently pending</u>

2. Name the parties to the previous lawsuits:
   Plaintiff: <u>Dennis Thomas</u>
   Defendant: <u>Pamela Horne</u>
3. Docket number: Winn Parish 8th JDC
   <u>43923</u>
4. Date on which lawsuit was filed:
   <u>September 26, 2013</u>
5. Disposition and date thereof:
   <u>Case dismissed</u>

1b.

(Rev. 5/1/13)

c.  Have you filed any lawsuit or appeal in any federal district court or appeals court which has been dismissed?

Yes [ X ]    No [   ]

If your answer to the preceding question is "Yes," state the court(s) which dismissed the case, the civil action number(s), and the reason for dismissal (e.g., frivolity, malice, failure to state a claim, defendants immune from relief sought, etc.).

USDC No. 3:10-CV-478 This judgment was vacated and the case was remanded per USCA No. 10-31101.

II.  a.  Name of institution and address of current place of confinement:

David Wade Corr. Ctr. 670 Bell Hill Rd. Homer, LA 71040

b.  Is there a prison grievance procedure in this institution?

Yes [ X ]    No [   ]

1.  Did you file an administrative grievance based upon the same facts which form the basis of this lawsuit?

Yes [ X ]    No [   ]

2.  If you did not file an administrative grievance, explain why you have not done so.

_____

_____

3.  If you filed an administrative grievance, answer the following question. What specific steps of the prison procedure did you take and what was the result? (For example, for state prisoners in the custody of the Department of Public Safety and Corrections: did you appeal any adverse decision through to Step 3 of the administrative grievance procedure by appealing to the Secretary of the Louisiana Department of Public Safety and Corrections? For federal prisoners: did you appeal any adverse decision from the warden to the Regional Director for the Federal Bureau of Prisons, or did you make a claim under the Federal Tort Claims Act?)

First Step Request denied December 8, 2016
Second Step Request for Relief denied January 30, 2017

Attach a copy of each prison response and/or decision rendered in the administrative proceeding.

III.  Parties to Current Lawsuit:

a.  Plaintiff, Secretary of La.D.P.S.&C. Dennis D. Thomas

Address 670 Bell Hill Rd. Homer, LA 71040

III. Parties to Current Lawsuit: (continued)
    b. 1. Defendant <u>Secretary James LeBlanc</u>
is and was at all relevant times herein the
Secretary of the La. D.P.S. & C. with responsibility
for operating and maintaining detention,
penal, and corrective institutions within the
State of Louisiana, including Winn Correctional
Center. He is being sued in his individual
capacity, and his business address is
La. D.P.S. & C., P.O. Box 94304, Baton Rouge,
LA 70804-9304.

NOTE: Plaintiff does not know the actual name
of the person who was the acting President of
Corrections Corporation of America (now known
as Corecivic) nor the person who was the acting
Sheriff of Winn Parish nor the person who
was the acting Warden of Winn Correctional
Center at the time of the incident which gives
rise to this action and, therefore, refers to
each person by the title he held at that time.

2. Defendant <u>John Doe</u> was at all relevant
times herein employed as President of
Corrections Corporation of America which is

2a.

now known as Corecivic. He is being sued in both his individual and official capacity and his last known place of business is Corrections Corporation of America, 10 Burton Hill Boulevard, Nashville, TN 37215.

3. Defendant <u>Warden John Doe</u> was at all relevant times herein the warden or "superintendent" of the parish prison for the parish of Winn. As Warden of the prison, Defendant managed its day-to-day operations and executed its policies. He is being sued in his individual and official capacity and his last known place of business is Winn Correctional Center, P.O. Box 1435, Winnfield, LA 71483.

4. Defendant <u>John Doe</u> was at all relevant times herein sheriff of the parish of Winn. He is being sued in his individual capacity, and his last known place of business is the Winn Parish Sheriff Office.

5. Defendant <u>Cheryl Wiley</u> was at all relevant times herein employed as Unit Manager of Ash Unit at Winn Correctional Center. She is

2b.

being sued in both her individual and official capacity, and her last known place of business is Winn Correctional Center, P.O. Box 1435, Winnfield, LA 71483.

6. Defendant <u>Virgil Lucas</u> was at all relevant times herein employed as Chief of Security at Winn Correctional Center. He is being sued in both his individual and official capacity and his last known business address is Winn Correctional Center, P.O. Box 1435, Winnfield, LA 71483.

7. Defendant _____<u>Ward</u> was at all relevant times herein employed as Shift Supervisor at Winn Correctional Center. He is being sued in both his individual and official capacity and his last known business address is Winn Correctional Center, P.O. Box 1435, Winnfield, LA 71483.

8. Defendant <u>Nurse</u>_____<u>Warren</u> was at all relevant times herein employed as a nurse at Winn Correctional Center. She is being sued in both her individual and official capacity

2c.

and her last known business address is Winn Correctional Center, P.O. Box 1435, Winnfield, LA 71483.

9. Defendant <u>Doctor John Doe</u> was at all relevant times herein employed as a doctor at Winn Correctional Center. He is being sued in both his individual and official capacity and his last known business address is Winn Correctional Center, P.O. Box 1435, Winnfield, LA 71483.

2d.

(Rev. 5/1/13)

b.   Defendant, _James LeBlanc_ , is employed as _Secretary_ at _La. D.P.S. & C._ .

Defendant, _John Doe (Identity Unknown)_ , is employed as _President_ at _CCA / Corecivic_ .

Defendant, _John Doe (Identity Unknown)_ , is employed as _Warden_ at _Winn Correctional Center_ .

Additional defendants, _Sheriff of Winn Parish, Unit Mgr. Cheryl Wiley, Chief of Security Virgil Lucas, Shift Supervisor ___ Ward, Nurse ___ Warren_

## IV.   Statement of Claim

State the FACTS of your case. Specifically describe the involvement and actions of each named defendant. Include the names of all persons involved in the incident(s) or condition(s) giving rise to this lawsuit, and the dates upon which and the places where the incident(s) and/or condition(s) occurred. YOU ARE REQUIRED TO SET FORTH ONLY FACTUAL ALLEGATIONS. YOU ARE NOT REQUIRED TO SET FORTH LEGAL THEORIES OR ARGUMENTS.

The conditions of confinement caused plaintiff to have to defend himself against a gang attack by three or more armed prisoners and is the result of cumulative actions and inactions by numerous officials both inside and outside the prison. While the degree of liability and/or level of involvement of each defendant will be more clearly established once plaintiff is allowed discovery, plaintiff alleges that the President of Corecivic (formerly known as Corrections Corporation of America) the Sheriff of Winn Parish, the Secretary of the La. D.P.S. & C., the Warden of Winn Correctional Center, Chief of Security Virgil Lucas, Unit Manager Cheryl Wiley, and Shift Supervisor ___ Ward were all deliberately indifferent to the substantial

Page 3 of 4

IV. (continued)

risk of plaintiff being attacked by more persons than he could reasonably be expected to defend himself against. Each defendant's involvement is alleged as follows:

The President of Corecivic (formerly known as Corrections Corporation of America) entered into a contract with the Secretary of La.D.P.S.&C. and/or the Winn Parish Sheriff to manage the Winn Correctional Center located in Winn Parish, LA. The terms of the contract required Corecivic to maintain a certain level of security for the purpose of protecting prisoners from the type of attack which plaintiff suffered. The President was aware of the substantial risk created by housing as many as forty-four prisoners together in an open dormitory setting without those prisoners being under constant surveillance by a security officer. The President, in an effort to increase profits, provided an ineffective alternative to having an officer inside the dormitory with the prisoners or otherwise positioned so that (s)he would have an

3a.

unobstructed view of the entire dormitory at all times. Although the President had a duty to promulgate a security policy/protocol and to provide the necessary resources (i.e. technology, manpower, classification system), he failed to implement and/or execute such measures or create an internal affairs unit or some other mechanism which would have served to warn him that the security policy was inadequate or was not being followed. These and other actions/inactions by this defendant resulted in the unsafe conditions in which plaintiff was confined.

The Sheriff of Winn Parish and/or the Secretary of the La. D.P.S. &C, had a duty to monitor Corecivic so as to ensure its full compliance with the terms of the contract. One or both of these defendants failed to specify the exact security measures to be put in place or failed to verify the effectiveness of those that the President of Corecivic decided to put in place. One or both defendants knew that the terms of the contract were not being met but did nothing to correct the deficiency. One or both

3b.

defendants were aware of the substantial risk created by housing up to forty-four prisoners in an open dormitory setting without providing for the monitoring of the entire dormitory at all times. One or both defendants knew that the surveillance cameras used by CCA/Corecivic as an alternative to having an officer directly on the tier was an ineffective security measure due to the poor quality of the surveillance footage and the lack of manpower necessary to observe each tier via the surveillance cameras at a level consistent with that of having an officer directly on the tier or posted at a nearby location from which (s)he would have an unobstructed view. One or both defendants either failed to require that CCA/Corecivic implement a zero-tolerance policy with respect to aggravated/gang fights or failed to provide the infrastructure necessary to segregate participants in aggravated/gang fights from the general prison population until that prisoner was determined to no longer pose a security

3c.

risk. One or both defendants knew of other reasonable measures that would have prevented or reduced the severity of the attack but failed to put them in place.

The acting Warden of Winn Corr. Ctr. at the time of the incident was deliberately indifferent to the substantial risk created by housing as many as forty-four prisoners together in an open dormitory by failing to create and/or enforce a security policy that contained reasonable measures to meet this risk. Plaintiff alleges that the security policy and/or terms of his employment specified the action that the Warden was to take but will not be able to identify all areas in which the Warden failed to act until plaintiff is allowed discovery. However, plaintiff intends to prove one or more of the following: 1) The incidence of gang fights involving prisoners armed with weapons was longstanding and pervasive; 2) The Warden was aware that security officers were either under-trained or simply neglected to follow safety regulations; 3) The Warden was aware of the need for security personnel who were

3d.

especially equipped and trained to meet this risk but failed to employ such personnel; and 4) The Warden knew that his prison was woefully understaffed but failed to implement measures that would meet the risk this condition created.

Winn Correctional Center's Chief of Security Virgil Lucas was aware of the substantial risk created by housing up to forty-four prisoners in an open dormitory setting without providing the level of staffing necessary for the continuous supervision of the entire dormitory. Chief Lucas failed to implement, execute, or otherwise effectuate the existent security measures or revise the measures once he realized the inadequacy of them. He failed to enforce a zero-tolerance policy with respect to aggravated/gang fights and allowed participants in such fights to be punished in the same manner as participants in simple fights. He failed to ensure that security personnel were conducting frequent security searches of prisoners, their property, and all areas of the prison to which prisoners had access. Chief Lucas was

3e.

aware that the level of staffing was so inadequate as to allow prisoners to go without supervision for extended periods of time but did nothing to correct this defect. Chief Lucas also failed to make available an emergency response team that would respond to and neutralize gang/aggravated fights.

Unit Manager Cheryl Wiley observed the entire incident from start to finish but took no action to intervene or otherwise disrupt the attack. Prior to the incident, Plaintiff informed U.M. Wiley of his desire to be reassigned to one of the other seven tiers in the unit but told plaintiff to submit an Honor Tier Application. U.M. Wiley was aware that there was a higher than usual risk of violence occurring on this tier but did not take any action to meet this risk. Plaintiff further alleges that U.M. Wiley had a specific duty as Unit Manager to protect prisoners assigned to Ash Unit from being attacked by other prisoners but failed to carry out her duty.

Shift Supervisor _____ Ward placed plaintiff at serious risk of being attacked again as a result of his handling of the

3f.

investigation. Defendant Ward's investigation was deficient and resulted in prisoners who were not involved to be punished while allowing some prisoners who were involved to escape punishment altogether. Defendant Ward claimed that the surveillance footage was so poor in quality that he couldn't positively identify all persons involved but refused to allow plaintiff to assist in the investigation out of fear that plaintiff would retaliate if he learned their identity. Defendant Ward's failure to act according to the prison's security policy resulted in the attack that plaintiff suffered and/or placed him in danger of being attacked again.

On April 8, 2013, plaintiff was attacked by another prisoner in the T.V. room of the B-2 Tier of the Ash Unit at Winn Correctional Center located in Winn Parish, Louisiana.

The prisoner, Elliot Bright, attacked plaintiff by pushing him down onto the metal bench that serves as a sitting platform. The prisoner pushed plaintiff by placing both hands palm forward against his chest and shoving backwards with enough force to take him off his feet. If not

3g.

for the metal bench behind him, plaintiff would have fallen to the floor.

Plaintiff was pushed three times, successively. Each time, plaintiff rose to his feet after being pushed down. After the third time, plaintiff defended himself by striking the prisoner upon the chin. This caused his attacker to fall into a dazed stupor.

After recovering his senses, the attacker charged towards plaintiff, and plaintiff rebuffed his attack by pushing him away. The attacker then walked to his sleeping area which was located at the utmost rear of the tier. Plaintiff walked with him, all the while imploring him to make peace.

When he made it to the back of the tier, the attacker flipped over his mattress and retrieved an ankle wrap and wrapped his right hand with it. By this time, a third prisoner approached the two and suggested that they make peace. Although plaintiff agreed with this suggestion, his attacker was determined to fight.

The attacker then made a remark about

3h.

killing plaintiff and the two squared off (prepared themselves to fight). The attacker rushed plaintiff, and plaintiff repelled the attack by striking him twice in the face. He attempted to rush plaintiff again with the same result. As they squared off for the third time, someone attacked plaintiff from the rear.

Plaintiff never discovered the identity of this new assailant. This ~~plaintiff~~ person hit plaintiff in the head with an unknown object and dazed him. Plaintiff then fell into a semiconscious stupor and didn't regain full use of his senses until he made it to the infirmary.

Plaintiff has a hazy recollection of being surrounded by three or more prisoners and of being struck with hard objects. From the nature of the injuries he received, plaintiff concludes that his attackers were armed with master-locks and home-made knives. Plaintiff recalls fighting off his attackers and jogging to the front of the tier. Plaintiff recalls calling for a security officer who then appeared and opened the B-2 Tier gate.

Once the security gate was opened,

31.

plaintiff left the tier and walked to the infirmary. Unit Manager Wiley attempted to follow plaintiff, but due to her injured hip, she could not keep up. Plaintiff saw no other security personnel along the way.

After making it to the infirmary, plaintiff was shown to a medical screening room. He immediately used the sink to rinse the blood from his wounds. At this point, plaintiff noticed three puncture wounds to his head and a knot on the back of it. Plaintiff then took a seat and waited to be seen by medical.

Nurse Warren appeared and used a gauze dipped in some type of astringent to cleanse plaintiff's wounds. She then applied "Steri-strips" to two of the wounds. She then left and when she returned, plaintiff informed her that she had missed two other wounds. She attempted to treat those, but I told her all I needed was a tetanus shot. Nurse Warren then informed plaintiff that the doctor would make that decision, but plaintiff was not seen by a doctor. No one took pictures of the wounds plaintiff received during the attack.

Shift Supervisor Ward appeared after the

3 j.

medical evaluation, and plaintiff asked him how many people attacked him. Shift Supervisor Ward informed plaintiff that the surveillance footage was so poor that he was having a hard time identifying those who were involved. Plaintiff then informed Defendant Ward that he was in a fight with one person when he was attacked from the rear by another. When plaintiff asked Defendant Ward whether he could view the camera footage of the incident so that he could attempt to identify his attackers, he was told that policy did not allow it. When plaintiff objected to the unreasonableness of such a policy, Defendant Ward told him that allowing plaintiff to view the camera footage might result in him retaliating against his attackers. Defendant Ward never inquired as to what the fight was about nor as to whether plaintiff feared being attacked again. Ward showed no concern over the fact that weapons were used. After Defendant Ward left, Asst. Shift Supervisor _____ Gomez appeared to escort me to Cypress (Admin./Disc. Segregation Unit).

3k.

Plaintiff was placed in cell #3 or #4 of Cypress A-1 Tier. Plaintiff doesn't recall how long he remained there before being allowed to return to the general population. When he received the Disciplinary Report, plaintiff saw that U.M. Wiley's description of the incident was incomplete. While Wiley stated that she observed plaintiff and one other prisoner fighting, she does not mention that more prisoners got involved.

The other prisoners that were placed under investigation as suspects were put in cells on A-1 Tier and B-2 Tier. Plaintiff doubted that some of these prisoners were involved but couldn't be certain because he was in a semi-conscious state. At least five of these prisoners implored plaintiff to clear their names, and he explained to them that he couldn't say who wasn't involved because he didn't know who was. At the same time, the first person to attack me was asking me to release my other attackers by saying that the fight was only between me and him.

Plaintiff doesn't recall much about the

31.

disciplinary board hearing but that the boardmembers were Facility Investigator _____ Glover and an unknown elderly white woman. Plaintiff was sentenced to ten days isolation and given credit for time served. When plaintiff returned to general population, he was assigned to the same unit but a different tier (C-2 Tier).

Plaintiff was never informed of the punishment that his initial attacker received nor the number of his other attackers whom received punishment. Plaintiff recalls seeing one person whom he suspected was amongst the group of people who attacked him shortly after he was released. On more than one occassion, this prisoner attempted to provoke plaintiff by giving him mean looks, calling him a "rat," and telling him, "I'm ready to ride out." Plaintiff also recalls seeing Elliot Bright while on his way to the cafeteria. No prison official or security officer had informed plaintiff that Bright or any of the other attackers had been released. Neither was plaintiff questioned about any fear he may have had for his personal safety.

3m.

Plaintiff was never tested for any infectious disease(s) he may have acquired from the weapon that was used to puncture his scalp. The astringent/antiseptic that Nurse Warren used to clean one of the wounds left a three-finger wide baldspot on my scalp. Plaintiff recalls that Nurse Warren rubbed this area vigorously for a longer than necessary period of time. Plaintiff had a blood test in the winter of 2015 which revealed that he had been exposed to Hepatitis B. Plaintiff believes but cannot prove that he was exposed to this disease during the attack.

3n.

*(Rev. 5/1/13)*

V.    Relief

State exactly what you want the court to provide to you or do for you. Make no legal arguments. Cite no cases or statutes.

Plaintiff seeks #25,000 in damages from each defendant found to be responsible for violating plaintiff's constitutional right to be free from cruel and unusual punishment.

VI.    Plaintiff's Declaration

a.    I understand that if I am transferred or released, I must apprise the Court of my address, and my failure to do so may result in this complaint being dismissed.

b.    I understand that I may not proceed without prepayment of costs if I have filed three lawsuits and/or appeals that were dismissed on grounds that the action and/or appeal was frivolous or malicious, or failed to state a claim upon which relief may be granted, unless I am in imminent danger of serious physical injury.

c.    If I am located in a prison participating in the Electronic Filing Pilot Program, I consent to receive orders, notices and judgments by Notice of Electronic Filing.

Signed this 23rd day of January ,20 18 .

#533237

Prisoner no. (Louisiana Department of Corrections or Federal Bureau of Prisons)

Dennis O. Thomas

Signature of Plaintiff

Page 4 of 4